**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**TARA VALDEZ,**

    **Plaintiff,**

v.                                         **Case No:**

**HOME POINT FINANCIAL
CORPORATION,**

                                        **DEMAND FOR JURY TRIAL**

    **Defendant.**
_____/

**PLAINTIFF'S COMPLAINT
WITH INJUNCTIVE RELIEF SOUGHT**

      **COMES NOW**, Plaintiff, **TARA VALDEZ** ("Ms. Valdez" or "Plaintiff"), by and through the undersigned counsel, and hereby sues and files this Complaint and Demand for Jury Trial with Injunctive Relief Sought against Defendant, **HOME POINT FINANCIAL CORPORATION** ("Defendant"), and in support thereof states as follows:

*Introduction*

      1.    This action arises out of an alleged "Debt" or "Consumer Debt" as defined by Fla. Stat. § 559.55 (6) and Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 *et. seq.* ("FCCPA"), in attempting to collect such Debt by continuously sending people to Ms. Valdez's home to post letters on her door in connection with the collection of such alleged Debt after Ms. Valdez demanded Defendant stop contacting her, sending Ms. Valdez numerous collection letters that

misrepresent the amount of the alleged Debt, and by improperly furnishing negative information regarding her account to the credit reporting agencies, which can all reasonably be expected to harass Ms. Valdez.

### *Jurisdiction and Venue*

2. This Court has subject matter jurisdiction over the instant case arising under the federal question presented in the FDCPA pursuant to 28 U.S.C. § 1331.

3. Venue lies in this District pursuant to 28 U.S.C. § 1391 (b) and 15 U.S.C. § 1692k (d) and Fla. Stat. § 559.77 (1), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### *Parties*

4. Plaintiff, Ms. Valdez, was and is a natural person and, at all times material hereto, is an adult, a resident of Hillsborough County, Florida, a "consumer" as defined by 15 U.S.C. § 1692a (3), and a "debtor" or "consumer" as defined by Fla. Stat. § 559.55 (8).

5. At all times material hereto, Defendant was and is a corporation with its principle place of business in the State of Michigan and its registered agent, CORPORATION SERVICE COMPANY located at 1201 Hays Street, Tallahassee, Florida 32301.

6. At all times material hereto, Defendant was and is a "Consumer Collection Agency" as defined by Fla. Stat. § 559.55 (3) and/or a "Debt Collector" as defined by Fla. Stat. § 559.55 (7) and 15 U.S.C. § 1692a (6).

### *Statements of Fact*

7. On September 10, 2017, Hurricane Irma made landfall in Florida.

8. Hurricane Irma is the fifth-costliest hurricane to hit the mainland United States, causing an estimated $50 billion in damage according to the National Hurricane Center.

9. All sixty-seven Florida counties, including Hillsborough County where Ms. Valdez's home is located, were presidentially-declared major disaster areas due to Hurricane Irma.

10. At the time of Hurricane Irma and at all times relevant hereto, Ms. Valdez's home mortgage loan is identified by the unique loan number ending in 1644 ("Mortgage").

11. Ms. Valdez was current on her payments towards the Mortgage at the time of Hurricane Irma.

12. In or around November of 2017, Ms. Valdez entered into a disaster forbearance program ("Disaster Forbearance Program") with Defendant as servicer of the Mortgage, deferring her regular monthly installment payments towards the Mortgage for three months.

13. Despite the Disaster Forbearance Program in place, on December 18, 2017, Defendant sent Ms. Valdez a collection letter that identified the Mortgage loan number; the alleged "Amount Due" of $7,852.80 ("Debt"); a "Payment Due Date" of January 1, 2018; a late fee of $41.34 if payment was received after January 17, 2018; and

options for payment including online payment and pay-by-phone. ("Collection Letter 1"). *See* **Exhibit A.**

14. In January of 2018, at the end of the Disaster Forbearance Program, Defendant told Ms. Valdez she had not been with them long enough to qualify for a certain type of mortgage modification and insisted Ms. Valdez do a standard modification of her Mortgage.

15. Ms. Valdez reluctantly agreed and began making agreed-upon trial modification payments towards the Mortgage starting with a payment in February of 2018.

16. Despite Ms. Valdez making every payment on time since the Disaster Forbearance Program ended, Defendant began improperly furnishing negative credit reporting information to the credit bureaus regarding Ms. Valdez's Mortgage account.

17. Soon after, Ms. Valdez contacted Defendant and demanded that Defendant fix its inaccurate negative credit reporting.

18. On April 17, 2018, Defendant sent Ms. Valdez a letter apologizing for inaccurately reporting Ms. Valdez's loan as delinquent to the credit bureaus ("Credit Report Letter"). *See* **Exhibit B.**

19. Defendant stated in its Credit Report Letter that because of the recent natural disaster, Defendant will continue to place its credit reporting activity of Ms. Valdez's Mortgage account on hold as long as Ms. Valdez honored all of the commitments under the Homeowner Assistance Program and indicated that Defendant

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Valdez v. Home Point Financial Corporation*
Page **4** of **15**

sent updated records to the credit bureau to correct Defendant's derogatory reporting. *See* **Exhibit B.**

20. Despite Defendant's promise to Ms. Valdez that Defendant would correct its credit reporting error, Defendant continued to improperly furnish negative credit reporting information regarding Ms. Valdez's Mortgage account to the credit reporting agencies.

21. Moreover, in the summer of 2018, Defendant began sending representatives to Ms. Valdez's home in connection with the collection of the Debt.

22. In response, Ms. Valdez contacted Defendant in writing and demanded that Defendant cease and desist from communicating with her any further.

23. On June 26, 2018, despite Ms. Valdez's request that Defendant cease and desist, Defendant sent Ms. Valdez a collection letter that identified the Mortgage loan number; the "Amount Due" of $16,210.87; a "Payment Due Date" of July 1, 2018; a late fee of $41.34 if payment was received after July 17, 2018; and options for payment including online payment and pay-by-phone. ("Collection Letter 2"). *See* **Exhibit C.**

24. On July 6, 2018, Defendant sent a letter to Ms. Valdez acknowledging receipt of the cease and desist letter where Ms. Valdez notified Defendant that she does not authorize any further communications from Defendant. *See* **Exhibit D.**

25. On July 12, 2018, Defendant sent Ms. Valdez a letter to Ms. Valdez indicating that her Mortgage was being transferred to a different "Home Point," effective August 2, 2018 ("Notice of Servicing Transfer"). *See* **Exhibit E.**

26. Under information and belief, the different "Home Point" is a subsidiary or affiliate of Defendant.

27. On August 1, 2018, Defendant closed its Mortgage account with Ms. Valdez on her credit report with an inaccurate significant delinquency due to its Notice of Servicing Transfer.

28. Ms. Valdez had been remitting all payments on time toward the Mortgage account since the Disaster Forbearance Program ended back in January of 2018.

29. On August 16, 2018, despite Ms. Valdez making timely payments toward the Mortgage account and demanding that Defendant cease and desist further communication with her, Defendant sent another representative to Ms. Valdez's home to post an "URGENT NOTICE" on her door to immediately call Defendant in connection with the collection of the Debt. *See* **Exhibit F.**

30. On September 14, 2018, an independent field inspector performed an inspection of Ms. Valdez's property and left another letter requesting Ms. Valdez to contact Defendant in connection with the collection of the Debt. *See* **Exhibit G.**

31. On September 27, 2018, Defendant sent Ms. Valdez a collection letter that identified the Mortgage loan number; the "Amount Due" of $19,519.64; a "Payment Due Date" of October 1, 2018; a late fee of $41.34 if payment was received after October 16, 2018; and options for payment including pay-by-phone ("Collection Letter 3").

32. Included in Collection Letter 3 was an "Important Message" stating Ms. Valdez was "330 days delinquent" on her Mortgage, despite Ms. Valdez remitting timely payments since the Disaster Forbearance Program ended.

33. Around this time, Ms. Valdez contacted Defendant in attempts to finalize the modification process on the Mortgage that Defendant had been delaying since the Disaster Forbearance Program ended.

34. In or around October of 2018, Ms. Valdez signed a Mortgage modification agreement but Defendant never finalized the Mortgage modification due to its own internal delays.

35. Once again on October 17, 2018, Defendant sent a representative to Ms. Valdez's home to post another "URGENT NOTICE" on her door to immediately call Defendant in connection with the collection of the Debt. *See* **Exhibit H.**

36. On November 16, 2018, Defendant sent Ms. Valdez a collection letter that identified the Mortgage loan number; the "Amount Due" of $22,803.36; a "Payment Due Date" of December 1, 2018; a late fee of $41.34 if payment was received after December 16, 2018; and options for payment including pay-by-phone. ("Collection Letter 4"). *See* **Exhibit I.**

37. Four days later, on November 20, 2018, Defendant sent Ms. Valdez another collection letter that identified the Mortgage loan number; the "Amount Due" of $4,895.58; a "Payment Due Date" of December 1, 2018; a late fee of $41.34 if payment was received after December 16, 2018; and options for payment including pay-by-phone. ("Collection Letter 5"). *See* **Exhibit J.**

38. The information contained in Collection Letter 5 is very different than what was identified in Collection Letter 4 even though Defendant sent Collection Letter 4 to Ms. Valdez only four days prior.

39. Specifically, Collection Letter 4 indicates that Ms. Valdez owed a total amount of $22,803.36, and alternatively, Collection Letter 5 indicates that Ms. Valdez owed a total amount of only $4,895.58.

40. Additionally, Collection Letter 4 states that Ms. Valdez had "Paid Year to Date" a total of only $1,570.56 and in Collection Letter 5, Ms. Valdez had "Paid Year to Date" a total of $63,985.86.

41. Moreover, included in both Collection Letter 4 and Collection Letter 5 was an "Important Message" stating that Ms. Valdez was delinquent on the Mortgage, but it states in Collection Letter 4 that Ms. Valdez was 380 days delinquent and states in Collection Letter 5 that Ms. Valdez was 50 days delinquent on the Mortgage.

42. Defendant's multiple misrepresentations on the Mortgage account caused Ms. Valdez confusion about what the status of her Mortgage was.

43. On November 29, 2018 Defendant sent another representative to Ms. Valdez's home to post an "URGENT NOTICE" on her door to immediately call Defendant in connection with the collection of the Debt. *See* **Exhibit K.**

44. On December 12, 2018, Ms. Valdez signed another Mortgage modification agreement with Defendant, but Defendant has yet to finalize that Mortgage modification yet again due to its own internal delays.

45. On January 6, 2019, despite Ms. Valdez making timely payments toward the Mortgage, Defendant once again sent a representative to Ms. Valdez's home to post a letter on her door to contact Defendant in connection with the collection of the Debt. *See* **Exhibit L.**

46. On January 17, 2019, Defendant sent Ms. Valdez a collection letter that identified the Mortgage loan number; the "Amount Due" of $1,492.57; a "Payment Due Date" of February 1, 2019; a late fee of $34.77 if payment was received after February 16, 2019; and options for payment including pay-by-phone. ("Collection Letter 6"). *See* **Exhibit M.**

47. Defendant's collection letters 1-6 (collectively "Collection Letters") were all sent in connection with the collection of the Debt.

48. Defendant's communications in connection with the collection of the alleged Debt harassed Ms. Valdez due to the content, timing, and frequency of the communications.

49. Defendant's actions in connection with the collection of the alleged Debt caused Ms. Valdez to constantly worry about Defendant furnishing improper negative credit reporting regarding the Mortgage account to the credit reporting agencies.

### *Count 1: Violation of the Fair Debt Collection Practices Act ("FDCPA")*

50. Ms. Valdez re-alleges paragraphs 1-49 and incorporates the same herein by reference.

51. Ms. Valdez is a "consumer" within the meaning of the FDCPA.

52. The subject debt is a "consumer debt" within the meaning of the FDCPA.

53. Under information and belief, Defendant acquired servicing rights to Ms. Valdez's Mortgage after it allegedly fell into default status.

54. Defendant is a "debt collector" within the meaning of the FDCPA.

55. Defendant violated the FDCPA. Defendant's violations include, but are not limited to, the following:

   a. Defendant violated 15 U.S.C. § 1692c (b) by communicating improper credit reporting information regarding the Mortgage and Ms. Valdez to the consumer reporting agencies in connection with the collection of the Debt.

   b. Defendant violated 15 U.S.C. § 1692c (c) by communicating with Ms. Valdez in connection with the collection of the Debt even after Ms. Valdez notified Defendant in writing that Ms. Valdez demanded Defendant cease further communications with her.

   c. Defendant violated 15 U.S.C. § 1692d by attempting to collect the Debt from Ms. Valdez after Ms. Valdez was making timely payments toward the Mortgage account, the natural consequence of which is to harass and abuse Ms. Valdez in connection with the collection of the Debt.

   d. Defendant violated 15 U.S.C. § 1692d by repeatedly sending representatives to Ms. Valdez's home in connection with the collection of the Debt, the natural consequence of which is to harass and abuse Ms. Valdez.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Valdez v. Home Point Financial Corporation*
Page **10** of **15**

  e. Defendant violated 15 U.S.C. § 1692e (2)(A) by falsely representing the character, amount, or legal status of the Debt in the Collection Letters.

  f. Defendant violated 15 U.S.C. § 1692e (8) by communicating to the consumer reporting agencies credit information regarding the Mortgage which was either known or should have been known to be false.

56. As a result of the above violations of the FDCPA, Ms. Valdez has been subjected to illegal collection activities for which she has been damaged.

57. Defendant's actions have damaged Ms. Valdez by invading her privacy.

58. Defendant's actions have damaged Ms. Valdez by causing harm to her reputation.

59. Defendant's actions have damaged Ms. Valdez by causing her stress.

60. Defendant's actions have damaged Ms. Valdez by causing her aggravation.

61. Defendant's actions have damaged Ms. Valdez by causing her anxiety.

62. Defendant's actions have damaged Ms. Valdez by being an annoyance.

63. Defendant's actions have damaged Ms. Valdez by causing her a loss of sleep.

64. Defendant's actions have damaged Ms. Valdez by causing her emotional distress.

65. Defendant's actions have damaged Ms. Valdez by preventing her from getting future credit.

66. It has been necessary for Ms. Valdez to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

67. All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

    a. Awarding statutory damages as provided by 15 U.S.C. § 1692k(a)(2)(A);

    b. Awarding actual damages;

    c. Awarding costs and attorneys' fees; and

    d. Any other and further relief as this Court deems just and equitable.

### *Count 2: Violation of the Florida Consumer Collection Practices Act ("FCCPA")*

68. Ms. Valdez re-alleges paragraphs 1-49 and incorporates the same herein by reference.

69. Defendant violated the FCCPA. Defendant's violations include, but are not limited to, the following:

    a. Defendant violated Fla. Stat. § 559.72(5) by willfully and knowingly furnishing inaccurate information to the credit reporting agencies that affected Ms. Valdez's reputation for creditworthiness after Defendant sent Ms. Valdez the Credit Report Letter that reassured her that Defendant

would not report her payments late, and with knowledge or reason to know that the information was false.

b. Defendant violated Fla. Stat. § 559.72(7) by showing up at Ms. Valdez's home in connection with the collection of the Debt despite Ms. Valdez making timely payments toward the Mortgage account, and even after Ms. Valdez told Defendant to stop contacting her, which can reasonably be expected to abuse or harass Ms. Valdez.

c. Defendant violated Fla. Stat. § 559.72(7) by continuing to send Ms. Valdez Collection Letters after Ms. Valdez requested that Defendant cease and desist further communication with her.

d. Defendant violated Fla. Stat. § 559.72(9) by claiming and attempting to enforce the Debt at its visits to Ms. Valdez's home and in its Collection Letters when Defendant knew that Ms. Valdez was making timely payments toward the Mortgage account.

e. Defendant violated Fla. Stat. § 559.72(9) by improperly charging Ms. Valdez for the people continuously coming out to Ms. Valdez's home.

70. As a result of the above violations of the FCCPA, Ms. Valdez has been subjected to unwarranted and illegal collection activities and harassment for which she has been damaged.

71. Defendant's actions have damaged Ms. Valdez by invading her privacy.

72. Defendant's actions have damaged Ms. Valdez by causing harm to her reputation.

73. Defendant's actions have damaged Ms. Valdez by causing her stress.

74. Defendant's actions have damaged Ms. Valdez by causing her aggravation.

75. Defendant's actions have damaged Ms. Valdez by causing her anxiety.

76. Defendant's actions have damaged Ms. Valdez by being an annoyance.

77. Defendant's actions have damaged Ms. Valdez by causing her a loss of sleep.

78. Defendant's actions have damaged Ms. Valdez by causing her emotional distress.

79. Defendant's actions have damaged Ms. Valdez by preventing her from getting future credit.

80. It has been necessary for Ms. Valdez to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

81. All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

a. Awarding statutory damages as provided by Fla. Stat. § 559.77;

b. Awarding actual damages;

c. Awarding punitive damages;

d. Awarding costs and attorneys' fees;

e. Ordering an injunction preventing further wrongful contact by the Defendant; and

f. Any other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, Tara Valdez, demands a trial by jury on all issues so triable.

Respectfully submitted this **March 15, 2019**,

/s/ Michael A. Ziegler
Michael A. Ziegler, Esq.
Florida Bar No. 74864
mike@zieglerlawoffice.com

/s/ Kaelyn Steinkraus
Kaelyn Steinkraus, Esq.
Florida Bar No. 125132
kaelyn@zieglerlawoffice.com

Law Office of Michael A. Ziegler, P.L.
2561 Nursery Road, Suite A
Clearwater, FL 33764
(p)  (727) 538-4188
(f)  (727) 362-4778
Attorneys and Trial Counsel for Plaintiff